Bernard A. Smith, Counterplaintiff-Appellee, v. Floyd A. Bliss, Counterdefendant-Appellant.

(No. 55256;

First District (3rd Division)—June 28, 1973.

Tom L. Yates, of Chicago, (Carl E. Abrahamson, of counsel,) for appellant.

Neil Quinn and Joseph B. Lederleitner, both of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Floyd A. Bliss brought an action in the circuit court of Cook County against Bernard A. Smith for personal injuries resulting from an accident involving tractor-trailer trucks. Smith filed a counterclaim against Bliss

for property damage to his truck resulting from the same accident. The original personal injury action was settled and dismissed; however the parties proceeded to trial on the property damage counterclaim. The jury returned a verdict for Smith (hereinafter plaintiff) against Bliss (hereinafter defendant), and assessed damages at $6,917.63. The trial court entered judgment on the verdict and denied defendant's post-trial motion. Defendant appeals.

On appeal, defendant initially contends that the judgment must be reversed because the evidence was insufficient to support the verdict. Should this court find the evidence sufficient, he argues, in the alternative, that the judgment should be reversed and remanded because of the following trial errors: (1) the trial court permitted plaintiff's counsel to improperly interrogate plaintiff; (2) the court improperly permitted plaintiff's counsel to read excerpts from the original complaint to the jury; (3) the court improperly refused to give the jury a special interrogatory tendered by defendant; and (4) the court improperly permitted plaintiff's counsel to ask prejudicial questions in order to draw objections.

The accident in question occurred on Route 66 somewhere west of County Line Road at approximately 2:00 A.M. on July 9, 1962. The night was clear and dry. At the place of the collision, Route 66 had three·lanes of traffic in each direction, separated by a median strip and governed by a speed limit of fifty miles per hour. Each lane was ten to twelve feet wide. A tractor-trailer, owned by plaintiff and driven by Clyde Freeman, who died as a result of injuries sustained in the accident, collided with a tractor-trailer operated by defendant as the latter was pulling onto the highway from the paved shoulder of the road. Another tractor-trailer, operated by Robert Braden, had just pulled onto the outer lane of the highway from the shoulder in front of defendant. The front of plaintiff's truck struck the rear of defendant's truck, and the force of the collision propelled defendant's truck into the rear of Braden's truck. As a result of the impact, defendant's trailer was completely disengaged from the tractor and the king pin was sheared off. The cables which were part of the lighting system on defendant's truck were torn off. Both the front and rear of defendant's truck sustained damage. The cab of defendant's truck was severely damaged, and the rear part of the cab was crushed and partially torn from the frame. Defendant was thrown to the ground and sustained head injuries. Plaintiff's tractor also was severely damaged. The police were unable to find any skid marks at the scene.

Defendant and Braden were driving cattle to the Chicago stockyards in trucks owned by Braden's father. Defendant was having trouble with

his truck so he stopped near a Shell Gas Station located near the highway to have it repaired. Braden continued to the stockyards and returned several hours later, loaded the cattle from defendant's truck to his truck and delivered them to the stockyards.

Defendant testified as an adverse witness and stated that he was having trouble with the ignition system in his truck. He was towed to the nearby Shell station where they fixed the points and charged the battery. When Braden returned the second time, defendant had started home and was standing at a stop light just beyond the gas station. The two men pulled their trucks off the road, had a conversation and proceeded west on Route 66. A short time later, defendant again pulled off the highway and Braden did the same. Defendant pulled up behind Braden on the shoulder of the road and several minutes later they returned to their trucks. The back of defendant's trailer had ten lights, five across the top and five across the bottom, as well as reflectors. The lights were functioning. Braden and defendant had their turn signals on as they proceeded. Defendant also testified that Braden pulled onto the highway at a slight angle and entered the outer lane. Defendant followed and, when the front part of his unit was on the highway and the rear part was on the paved shoulder, defendant's truck was struck in the rear by plaintiff's employee. Defendant stated that he was going three to four miles per hour at the time of impact. He also testified that he did not see any lights approaching prior to the accident.

Defendant was asked by plaintiff's counsel whether his trailer lights were operating when he left the gas station and whether he had filed a lawsuit against the Shell Oil Company charging that Shell had failed to properly repair his lights and ignition system. Defendant answered that his lights were working, and denied that he had charged Shell Oil with such negligence. Counsel for plaintiff then read a portion of a complaint filed by defendant charging Shell with such failure.

Richard Steinhouse testified for the plaintiff that he was in auto repair work. On the morning in question, he was called to the scene of the accident. He towed defendant's truck back to his garage. About six hours later, he tested the battery in defendant's truck and found it dead. The witness also testified that Clyde Freeman's body had to be pried from the cab of plaintiff's truck.

Johanna Freeman, the widow of the driver of plaintiff's truck, testified as to her husband's condition at the time of the accident and as to his careful habits.

Robert Braden testified for the defendant and described the circumstances of the accident in much the same way that defendant did. When Braden returned the second time and found defendant stopped at the

stop light on Route 66, he noticed that all the lights on the rear of defendant's trailer were functioning. Prior to the second stop, Braden, through his rear view mirror, noticed that defendant had pulled off the highway so Braden did the same. When they started to return to the highway, Braden did not see any lights behind them, and there was no other traffic. At the time of the collision, Braden's truck was entirely on the outer lane of the highway, and he was travelling from twenty to twenty-five miles per hour. Braden also testified that his trailer had five lights across the top, three in the center and one in each corner and that they were working. Both trucks had red reflectors. Braden also testified that the truck operated by defendant had been damaged beyond repair.

On cross-examination, Braden was referred to a statement he had given to a court reporter at the hospital where defendant and plaintiff's employee were taken after the accident. In that statement Braden said that defendant had pulled off the highway because he was having trouble with the carburetor and was losing power. He also stated that he saw lights from another vehicle about two blocks behind him when he pulled onto the highway, and that he was going from fifteen to twenty miles per hour at the time of the collision. Braden testified that he did not remember giving these statements. The court reporter subsequently testified that had taken these statements from Braden.

John G. Phillips, an attorney, testified that he had filed a complaint on behalf of defendant which charged the operator of a Shell station on Route 66 and his employee with the negligent repair of the lights and ignition system of defendant's truck. In the second count, plaintiff and his driver, Clyde Freeman, were charged with negligence, and the third count charged Shell Oil Company with negligence. Phillips also testified that he had never talked with defendant before filing the pleading, but rather that he had been given the information by a referring attorney who was deceased. The counts against Shell, the gas station operator and his employee had been dismissed.

Defendant, while testifying on his own behalf, stated that he had never told either attorney that the lights and ignition system on his truck had been defectively repaired.

Defendant's first contention concerns the sufficiency of the evidence in the trial court. He maintains that the evidence adduced at trial did not affirmatively show that plaintiff's damage was caused by defendant's negligence nor did the evidence show that plaintiff's decedent was free from contributory negligence.

█▌ Parties are entitled to a jury trial upon an issue where the evidence discloses a substantial factual dispute, but verdicts ought to be

directed and judgments *n.o.v.* ought to be entered by the trial court in those cases in which all of the evidence, viewed in the aspects most favorable to the party against whom the motion is directed, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.

Applying that rule to the facts of the instant case, we hold that the trial court erred in not directing a verdict for defendant or in not allowing defendant's post-trial motion. Under the facts of this case, plaintiff failed to establish that his employee was free from contributory negligence and in the exercise of ordinary care for the safety of plaintiff's property.

The evidence established that defendant's truck was preceded by Braden's truck as they returned to the highway. In addition to red reflectors, each truck was equipped with at least ten lights on the rear of the trailers. Defendant and Braden both testified that those lights, along with their turn-signals, were functioning and that their headlights were on. Prior to impact, Braden's truck had entered the highway, and he was already proceeding west in the outer lane. The night was clear and dry, and no other traffic was in the immediate vicinity of the open highway. At least two lanes of traffic in that direction were clear and unobstructed. Despite these circumstances, as defendant slowly pulled onto the highway, his truck was struck in the rear by the truck operated by plaintiff's employee. The violence and severity of the impact was clearly demonstrated: defendant's truck was propelled into the rear of Braden's moving truck; defendant's truck was beyond repair; its king pin was sheared off, and the trailer became disengaged from the tractor; the wiring system was torn apart; the rear part of the cab of defendant's truck was crushed and partly torn from its frame; and the defendant was thrown from the truck to the ground. All of the foregoing evidence, plus the photographic exhibits, clearly established that the plaintiff's employee was travelling at an excessive rate of speed and not keeping a proper lookout. Since no skid marks were found and two westbound lanes were open, plaintiff's employee apparently made no effort to apply his brakes or turn from the outer lane. A motorist driving on a preferential highway does not have an absolute right of way, but must exercise reasonable care to keep a lookout for vehicles entering the highway. (*Conner v. McGrew* (1961), 32 Ill.App.2d 214, 177 N.E.2d 417. Also see *Fina v. Richardson* (1937), 293 Ill.App. 133, 11 N.E.2d 842; *Sullivan v. Ohlhaver Co.* (1920), 291 Ill. 359, 126 N.E. 191.) And even if, as a result of impeachment, the testimony of defendant and Braden as to the functioning of defendant's truck lights is disregarded, it was undis-

puted that Braden's truck, fully illuminated, was travelling on the highway in full view prior to the collision.

In *Waldron v. Hardwick* (1968), 99 Ill.App.2d 36, 240 N.E.2d 772, this court reversed a judgment for damages which had been entered in favor of plaintiff. In that case, defendant had pulled off the highway to determine her direction. Before resuming travel, she looked to see whether there were any vehicles approaching from the rear. She did not look back again nor did she signal as she returned to the highway. Plaintiff testified that she did not see any vehicle in front of her until the collision and did nothing to avoid the impact. In *Waldron* this court held that, although there was evidence that defendant negligently started her standing vehicle, the plaintiff did not exercise due care where the evidence showed that plaintiff had run into defendant on an open highway without attempting to avoid the accident. Similarly, in the present case, we conclude that plaintiff's employee was not in the exercise of due care when he, while proceeding on an open highway, violently crashed into the rear of defendant's truck.

Since we have determined that the judgment must be reversed, it is inappropriate to consider defendant's other assignments of error.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY, P. J., and McGLOON, J., concur.