KENNETH K. GARNER, Plaintiff-Appellant, *v.* JOSEPH SKAFAR, Defendant-Appellee.

First District (2nd Division)   No. 62055

Opinion filed January 18, 1977.—Rehearing denied March 10, 1977.

Charles B. Fiduccia and Bernard R. Nevoral, both of Chicago, for appellant.

Michael F. Maloney, of Garbutt and Jacobson, and Fishman, Fishman and Saltzberg, both of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Kenneth K. Garner, brought an action to recover damages for personal injuries occasioned by the alleged negligence and wilful misconduct of defendant, Joseph Skafar, in the operation of his motor vehicle. The jury returned a general verdict in favor of plaintiff in the amount of $20,000 and responded to four special interrogatories finding defendant guilty of both negligence and wilful and wanton misconduct and further found plaintiff not guilty of either contributory negligence or contributory wilful and wanton misconduct. Judgment was entered on the general verdict, however, in response to defendant's post-trial motion the trial court set aside the general verdict and all special verdicts except that finding defendant negligent and granted defendant a new trial. This court allowed plaintiff's petition for leave to appeal from the aforementioned orders.

The sole issue before the court is whether the vacating of the jury's general verdict as well as its special findings and the granting of a new trial was a clear abuse of discretion.

The collision which gave rise to this litigation occurred on December 7, 1970, at approximately 7:30 a.m. at the intersection of 48th Street and Wood Street in Chicago, Illinois. Wood Street is a two-lane paved roadway bearing north and south bound traffic. At this intersection 48th Street is also a two-lane paved roadway and it bears east and west bound traffic. Stop signs control both north and south bound traffic on Wood Street at this intersection. The speed limit on 48th Street in this vicinity is 30 m.p.h. and east and west bound traffic on 48th Street approach the intersection without benefit of traffic control devices. On the date of the collision all streets were clear and dry.

Plaintiff was the sole occupant of his vehicle and was proceeding south on Wood Street to his place of employment. Traffic on Wood Street was characterized as "heavy." As he approached the intersection of 48th Street and Wood Street plaintiff initially came to a stop in obedience to the stop sign, checked traffic and was able to see eastward a distance of four houses. Plaintiff moved forward a short distance and stopped again such that the front of his vehicle drew even with the north curb of 48th Street.

Plaintiff again checked the traffic. To plaintiff's left, he observed defendant's west bound vehicle at a distance of approximately one block. To his right, plaintiff observed an east bound vehicle in the process of pulling over and parking on 48th Street. At this time plaintiff also observed a north bound vehicle on Wood Street entering the intersection. As the latter vehicle passed through, plaintiff proceeded into the

intersection. Plaintiff estimated that the time which elapsed in observing the opposing traffic was "just as long as it would take to look" and in so doing he averted his eyes from the east and defendant's approaching vehicle for approximately ten seconds.

Plaintiff had proceeded into the intersection approximately twenty feet when he heard a "roar" causing him to look again to his left. He observed defendant's vehicle at a distance of approximately three car lengths coming "fast" and "really moving" east on 48th Street. Based upon his 14 years of driving experience, plaintiff estimated the speed of defendant's on-coming vehicle to be approximately 60 m.p.h. Plaintiff applied his brakes and was struck by defendant's automobile. Upon impact plaintiff's vehicle came to rest against a building on the southwest corner of the intersection and defendant's vehicle stopped alongside plaintiff. As a result of the collision plaintiff sustained severe and permanent injuries.

Defendant testified that on the date in question he too was in the course of driving to his place of employment and like plaintiff was familiar with the intersection of 48th and Wood Streets. Defendant entered the west bound lane of 48th Street at a point two blocks east of the eventual point of impact. Upon proceeding west for approximately one-half block, defendant had occasion to look into his rear-view mirror, affording him a view of an unidentified automobile that had drawn near. Defendant estimated that the automobile had approached to a distance of five feet. At a point one block east of the eventual point of impact defendant again checked his rear-view mirror to determine the location of the closely following vehicle. Defendant checked his speedometer and gradually increased his speed as he drew near the intersection of 48th and Wood Streets.

Defendant indicated that he observed plaintiff's vehicle in motion from a distance of 3-5 car lengths. According to testimony adduced at trial one "car length" equalled 18-20 feet. Defendant testified that at this point his speed was within the limit and his foot was off the accelerator pedal and was resting on the brake. Defendant stated that plaintiff's vehicle entered the intersection and defendant's driving lane as defendant's vehicle drew even with the east curb of Wood Street. Defendant's vehicle struck plaintiff's vehicle at a point from the front wheelwell extending to the driver's door. At the time of impact plaintiff's automobile was south of the center line of 48th Street.

Plaintiff also called as a witness John Donnelly, an insurance investigator, who testified to a telephone conversation he had with defendant on the day following the accident. Donnelly related that defendant admitted on that occasion that the automobile which had followed him for a block preceding the accident was "pressuring" or "chasing" him so that he

could not stop. Defendant testified that he did not recall this conversation with Donnelly.

There is ample evidence upon which the jury and the trial court were able to conclude that defendant was negligent. The trial court, however, erroneously concluded that the jury's special finding that plaintiff was free of contributory negligence was against the preponderance of the evidence and in support of this position relied upon plaintiff's admitted failure to look eastward for a period of 10 seconds after initially observing defendant's vehicle during which time plaintiff maneuvered approximately twenty feet into the intersection.

■■ ■ The question of contributory negligence on the part of one entering a preferential highway protected by a stop sign is ordinarily for the trier of fact. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) In order to establish contributory negligence on plaintiff's part, it must be shown that he breached his duty of due care and that without his breach of duty the accident would not have occurred. (*McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 243 N.E.2d 657.) The applicable statute (Ill. Rev. Stat. 1969, ch. 95½, par. 11—904) does not confer an absolute right-of-way on the party traveling on the preferential highway, but requires only that a motorist confronted by a stop sign may, exercising due care, proceed across the intersection after he has stopped and yielded the right-of-way to such vehicles on the through highway as constitute an "immediate hazard." (*Pennington v. McLean* (1959), 16 Ill. 2d 577, 158 N.E.2d 624.) There are no precise standards and the issue involves considerations as to the relative speeds and distances of the vehicles. (*Pennington v. McLean.*) In the case at bar, the jury was properly instructed in these matters.

Application of these principles to the facts of the instant case requires reversal of the trial court's order. Defendant concedes that he was observed by plaintiff at a distance of 300 feet. This distance is the equivalent of one "short" city block. Plaintiff's testimony indicated that he observed defendant's vehicle from a similar distance. Assuming that defendant was traveling at a speed of 30 m.p.h. as claimed, it was computed at trial that defendant would require 7 seconds to reach the intersection. By contrast, within that space of time plaintiff would be required only to negotiate across the northernmost lane of 48th Street. There is no evidence in the record that plaintiff's path across 48th Street was blocked so as to impede his progress.

■■ Based upon such evidence we find that the jury properly concluded that plaintiff's estimation of the time and distance provided a sufficiently safe interval to permit plaintiff to negotiate the street; that plaintiff was free of contributory negligence or contributory wilful and

wanton misconduct; and that the collision was the proximate result of defendant's negligence for failure to maintain proper control of his vehicle at a reasonable rate of speed. Consequently, the jury's special findings as well as its general verdict in favor of plaintiff were supported by the evidence.

■■ Defendant re-emphasizes on appeal that plaintiff did not look again to his left after initially sighting defendant's vehicle, that he thereby averted his gaze for a period of approximately 10 seconds, and that such circumstance justified the conclusion of the trial court in granting defendant a new trial. It is well-settled that the trial court may not arbitrarily conclude that an individual about to enter an intersection would be guilty of contributory negligence if he did not take a "second look" or a "third look." *Neurohr v. Richmond* (1967), 78 Ill. App. 2d 467, 222 N.E.2d 808.

■■ We find that the trial court abused its discretion in setting aside the aforementioned general and special verdicts and granting a new trial.[1] The cause is reversed and remanded to the trial court with directions to vacate its order granting defendant a new trial and to reinstate the special verdicts and the general verdict in favor of plaintiff and against defendant in the amount of $20,000.

Reversed and remanded with directions.

DOWNING, P. J., and JIGANTI, J., concur.

---

[1] See *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 440, 359 N.E.2d 1078, wherein this court extensively discussed the applicable standard to be applied by the trial court in passing on a motion for a new trial, where no procedural errors are alleged, and the standard to be applied by this court in reviewing the trial court's order.